UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 08-269 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| TANDY W. MCELWEE, JR., ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court are Defendant Tandy W. McElwee, Jr.'s Motion for New Trial [Record Document 261] and Motion for Post Judgment Verdict of Acquittal [Record Document 262], and Defendant Ava Cates McElwee's Motion for Judgment of Acquittal, or Alternatively, Motion for New Trial [Record Document 253]. The United States opposes these motions. [Record Document 265]. For the reasons stated herein, defendants' motions are **DENIED.**

## BACKGROUND

After an eight-day jury trial, Defendant Tandy W. McElwee, Jr. ("Dr. McElwee"), a medical doctor specializing in Obstetrics and Gynecology, was convicted of the following counts:

    Count 1:    Conspiracy to obtain a controlled substance (hydrocodone) by fraud, in violation of 21 U.S.C. § 846.

    Counts 9, 15, 20, 22-25, 27, 28, 40-42, 54, 58, 59-63:  Obtaining or acquiring a controlled substance (hydrocodone) by fraud, in violation of 21 U.S.C. § 843(a)(3) and 18 U.S.C. § 2.

    Count 73:    Conspiracy to possess with intent to distribute a controlled substance (hydrocodone), in violation of 21 U.S.C. § 846.

    Counts 74-82: Possession with intent to distribute a controlled substance

                    (hydrocodone), in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

    Count 83:    Providing false and fraudulent material information in a record of dispensed controlled substances, in violation of 21 U.S.C. § 843(a)(4)(A).

    Count 87:    Health care fraud, in violation of 18 U.S.C. § 1347 and § 2.

[Record Documents 1, 246].

Ava Cates McElwee ("Ms. McElwee"), a registered nurse practitioner and wife of Dr. McElwee, was convicted on the followings counts:

    Count 1:    Conspiracy to obtain a controlled substance (hydrocodone) by fraud, in violation of 21 U.S.C. § 846.

    Counts 54:    Obtaining or acquiring a controlled substance (hydrocodone) by fraud, in violation of 21 U.S.C. § 843(a)(3) and 18 U.S.C. § 2.

Id.

Both defendants now move, pursuant to Federal Rule of Criminal Procedure 29, for a judgment of acquittal on the basis that the evidence was insufficient to support their convictions. Dr. McElwee also moves, pursuant to Federal Rule of Criminal Procedure 33, for a new trial in the interest of justice. In support of his motion, Dr. McElwee argues that the Court erred by giving a supplemental "missing witness" instruction to the jury after the Court instructed the jury and counsel had given their closing arguments. [Record Document 261].

### STANDARD OF REVIEW FOR RULE 29 JUDGMENT OF ACQUITTAL

In considering a motion for judgment of acquittal filed pursuant to Rule 29, this Court must review the sufficiency of the evidence supporting the jury's verdict. United States v. Dean, 59 F.3d 1479 (5th Cir. 1995). In so doing, the Court "consider[s] the evidence in the

light most favorable to the government," United States v. DeJean, 613 F.2d 1356, 1358 (5th Cir. 1980) (citations omitted), and, mindful that the jury is "free to choose among all reasonable constructions of the evidence," Dean, 59 F.3d at 1484 (citation and internal quotations omitted), makes "all reasonable inferences and credibility choices [. . .] in support of the jury verdict," DeJean, 613 F.3d at 1358 (citation omitted). See also, United States v. Robertson, 110 F.3d 1113, 1117 (5th Cir. 1997) ("Indeed, the court must view the evidence in the light most favorable to the verdict. In effect, the court assumes the truth of the evidence offered by the prosecution."). The Court reviews the sufficiency of circumstantial evidence in the same manner that it reviews the sufficiency of direct evidence. DeJean, 613 F.2d at 1359 (citations omitted).

The Court "must affirm the jury's verdict if it was supported by substantial evidence [such] that a reasonable trier of fact could have found guilt beyond a reasonable doubt." United States v. Wheeler, 802 F.2d 778, 782 (5th Cir. 1986) (citations omitted). It is not necessary that the evidence exclude every "reasonable hypothesis" of innocence. Dean, 59 F.3d at 1484 (citation omitted). The Court is to determine "only whether the jury made a rational decision, not whether its verdict was correct on the issue of guilt or innocence." Id. (citation omitted). In summary, the "ultimate question is whether, considering all evidence, the jury must necessarily have entertained a reasonable doubt." DeJean, 613 F.2d at 1359.

**STANDARD OF REVIEW FOR NEW TRIAL PURSUANT TO RULE 33**

Federal Rule of Criminal Procedure 33 permits the Court, upon motion, to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Cr. P. 33(a). The burden of demonstrating that a new trial is warranted in the "interest of justice"

rests on the defendant. United States v. Soto-Silva, 129 F.3d 340, 343 (5th Cir. 1997). Because Rule 33 motions "are not favored and are viewed with great caution," United States v. Blackthorne, 378 F.3d 449, 442 (5th Cir. 2004) (citation omitted), the remedy of a new trial is "rarely" granted and "is warranted only where there would be a miscarriage of justice or where the evidence preponderates heavily against the verdict." United States v. O'Keefe, 128 F.3d 885, 898 (5th Cir. 1997) (citation omitted) (internal quotations omitted).

In assessing a motion for new trial based on the weight of the evidence, the Court, in contrast to the approach established for evaluating motions for judgment of acquittal, need not view the evidence in the light most favorable to the Government, and can make its own credibility determinations. Robertson, 110 F.3d at 1117. Notwithstanding, the Court "may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." Id. at 1118 (citation omitted). In order for a new trial to be warranted, "[t]he evidence must preponderate heavily against the verdict such that it would be a miscarriage of justice to let the verdict stand." Id.

Also in assessing a motion for new trial, the Court has discretion to examine errors which may have been committed during the course of the trial. United States v. Simms, 508 F. Supp. 1188, 1203 (W.D. La. 1980). The defendant bears the burden of showing that (1) some error was in fact committed and (2) that such error was prejudicial to him. Id. Even if an error is found to exist, the Court will disregard such error unless "the court can conclude with a fair assurance, after carefully examining all the facts of the case, that the verdict was substantially swayed by the error." Id. (citing Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed.2d 1557 (1946)).

## DISCUSSION

I.  **"Missing Witness Instruction"**

As requested by counsel for the government and for the defendants, the Court instructed the jury on the applicable law before closing arguments. Subsequently, through counsel, Dr. McElwee argued that he did not knowingly participate in the conspiracies that were allegedly being operated by Wendy Chriss[1] to supply her and her cohorts with hydrocodone. Defense counsel focused upon the so-called "empty chair" or "black hole" created by the government's failure to call Chriss as a witness during the trial, and posited the question: "Where is Wendy Chriss?", insinuating that the government's failure to call Chriss as a witness was unfavorable to the government's case, and that this fact alone constituted sufficient, reasonable doubt to acquit.

After defense counsel's closing argument, the government requested the following supplemental instruction be read to the jury:

> As a general rule, where a witness is available to both the prosecution and the defense, no inference should be drawn against the party failing to call such witness. However, the government in every criminal case has the ultimate burden of proof. A defendant is not obligated to call any witness. He can rely on his presumption of innocence should he choose to do so.

(Hereinafter referred to as the "missing witness" instruction.)[2]

---

[1] Wendy Chriss was a co-defendant who pled guilty prior to trial. She was not called as a witness by either the government or the defense, although she was mentioned several times throughout the trial through documentary evidence and witness testimony.

[2] Although the "missing witness" instruction is not a Fifth Circuit Pattern Jury Instruction, the Fifth Circuit approved the use of this instruction in United States v. Vincent, 648 F.2d 1046, 1051 (5th Cir. 1981).

The defense objected to the "missing witness" instruction on the following grounds: (1) because the jury had already been instructed, they might give undue weight to an additional instruction, and (2) the witness was unavailable to the defense because she was under the government's control. The Court overruled the defendant's objections and instructed the jury accordingly.[3]

It is well-established in the Fifth Circuit that "any inference from a party's failure to call a certain witness equally available to both parties is impermissible." United States v. Chapman, 435 F.2d 1245, 1247 (5th Cir. 1970) (citing McClanahan v. United States, 230 F.2d 919, 925 (5th Cir. 1956), cert. denied, 352 U.S. 824, 77 S.Ct. 33, 1 L.Ed.2d 47 (1956)). Here, Wendy Chriss was equally available (or equally unavailable) to both parties. Although Chriss entered into a pretrial plea agreement with the Government, the agreement did not require Chriss's cooperation during trial nor did the agreement prevent her from testifying on behalf of the defendants. Both parties had equal opportunity to subpoena her. However, had the Government subpoenaed Chriss and compelled her to testify, she may have merely invoked her Fifth Amendment privilege and protected her own interests, thereby weakening the strength of the Government's case. Likewise, had Dr. McElwee subpoenaed Chriss, she would have had to invoke her Fifth Amendment privilege or admit guilt to lend credence to his defense. See Chapman, 435 F.2d at 1247-48.

---

[3]Neither the Court nor the Government was informed that Wendy Chriss's failure to testify was an issue to be addressed during closing arguments. Had defense counsel so informed the Court, the "missing witness" instruction would have been included in the original set of jury instructions and read to the jury before the arguments of both sides were made.

The Court finds that neither party was entitled to an adverse inference regarding the failure of Wendy Chriss to testify. Defense counsel's effort to create such an inference by arguing that the failure to call Wendy Chriss as a witness "sap[ped] the Government of its strength" was impermissible. Consequently, the supplemental "missing witness" instruction was warranted and appropriately informed the jury that no inference was to be made. Furthermore, even if the Court erred by giving the "missing witness" instruction to the jury, such error was in no way prejudicial to Dr. McElwee. To the contrary, the instruction emphasized that the Government bears the ultimate burden of proof in a criminal case, that a defendant is not required to call witnesses, and that a defendant is entitled to rely on his presumption of innocence. Such an instruction would not have "substantially swayed" the verdict. See e.g., United States v. Vincent, 648 F.2d 1046, 1051 (5th Cir. 1981) (after defense counsel argued that an inference of reasonable doubt could be drawn from the government's failure to call a witness, the trial court appropriately informed that the government had the ultimate burden of proof and that the defendant was not obliged to call any witness, as he could rely on his presumption of innocence should he choose to do so). Accordingly, Dr. McElwee's Motion for New Trial [Record Document 261] is DENIED.

## II.     Insufficiency of the Evidence

### A.     Tandy W. McElwee, Jr.

Dr. McElwee concedes, as he did at trial, to his guilt of Counts 54 and 58 through 63. [Record Document 262, n.1]. He contends, however, that there was insufficient evidence from which a reasonable jury could find him guilty beyond a reasonable doubt as to Counts 1, 9, 15, 20, 22-25, 27, 28, 40-42, 73-83, and 87 of the Indictment.

### 1. Conspiracy to Obtain a Controlled Substance by Fraud

Count 1 charges Dr. McElwee with conspiracy to obtain a controlled substance (hydrocodone) by fraud in violation of 21 U.S.C. § 846. The jury was instructed that to find Dr. McElwee guilty of this offense, the government must have proved beyond a reasonable doubt: (1) that two or more persons, directly or indirectly, reached an agreement to conspire to obtain and acquire a mixture and substance containing hydrocodone by misrepresentation, fraud, forgery, deception, or subterfuge; (2) that the defendant knew of the unlawful purpose of the agreement; and (3) that the defendant joined in the agreement willfully, that is, with the intent to further its unlawful purpose. [Jury Instruction No. 21].

A "conspiracy" is an agreement between two or more persons to join together to accomplish some unlawful purpose. It is a kind of "partnership in crime" in which each member becomes the agent of every other member. The Government is not required to present direct evidence of a conspiracy; rather, each element of the conspiracy may be proved by circumstantial evidence. United States v. Camilla, 20 F.3d 600, 603 (5th Cir. 1994), cert. denied, 513 U.S. 892, 115 S.Ct. 240, 130 L.Ed.2d 163. Nor does the Government have to present evidence of an express or formal agreement; a tacit understanding is sufficient. United States v. Hopkins, 916 F.2d 207, 212 (5th Cir. 1990).

Dr. McElwee argues that "there was no evidence from which the jury could infer that Dr. McElwee conspired with another person to obtain CDS by fraud" because Dr. McElwee testified that he believed there was a legitimate medical need for each prescription alleged in the contested counts. [Record Document 262-1, p.2]. The jury did not find his argument convincing at trial, nor does the Court find it convincing now. There was an abundance of evidence at trial regarding Dr. McElwee's involvement in the conspiracy with his seven co-

defendants[4]—e.g., there was documentary evidence and testimony that he granted access to a computer system for his employees to have unlimited authority to submit prescriptions to Safescript/QVL Pharmacy, that he provided his staff with pre-signed prescription pads, that he altered medical charts and that he back-dated notations of "authorized" prescriptions. Furthermore, the Government's expert, Dr. Michael Fleming, testified that hydrocodone should only be prescribed after a physical exam and diagnosis of a legitimate medical need, and that follow-up exams and testing are necessary when hydrocodone is prescribed long-term (none of which were performed by Dr. McElwee).

Dr. McElwee also argues that there was no evidence that he received a monetary gain from the conspiracy. But as the Government properly argued at trial and in response to defendant's motion, financial gain is not an element of the offense and is therefore irrelevant. Drug offenses are often committed by addicts who desire only to satisfy their personal habits and have no intention of making a financial gain.

Accordingly, after a careful and thorough review of the record, the Court finds that there was substantial evidence from which a rational jury could find Dr. McElwee's testimony to lack credibility and conclude beyond a reasonable doubt that Dr. McElwee conspired to obtain a controlled substance (hydrocodone) by fraud.

### 2. Conspiracy to Possess and Possession with Intent to Distribute a Controlled Substance (Hydrocodone)

Count 73 charges Dr. McElwee with conspiracy to possess with intent to distribute a controlled substance (hydrocodone) in violation of 21 U.S.C. § 846. At trial, the jury was

---

[4]The Indictment charged Dr. McElwee with conspiring with: Ava Cates McElwee, Wendy Benson Chriss, Susan Hotard, Sandra Brannon, Catherine Cockrell, Kristina Randall, and Carla Huff.

instructed that to find Dr. McElwee guilty of this offense, the Government must have proved beyond a reasonable doubt: (1) that two or more persons, directly or indirectly, reached an agreement to conspire to possess with intent to distribute a mixture and substance containing hydrocodone; (2) that the defendant knew of the unlawful purpose of the agreement; and (3) that the defendant joined in the agreement willfully, that is, with the intent to further its unlawful purpose. [Jury Instruction No. 21]. In addition, because of his position as a physician at the time of the charged conduct, the jury was instructed that they must also find beyond a reasonable doubt that Dr. McElwee conspired to distribute hydrocodone without a legitimate medical reason or beyond the usual course of professional practice. [Jury Instruction No. 24].

Counts 74-82 charge Dr. McElwee with possession with intent to distribute a controlled substance (hydrocodone) in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. To find Dr. McElwee guilty on these counts, the jury was required to find beyond a reasonable doubt: (1) that the defendant distributed or dispensed a mixture and substance containing hydrocodone; (2) that he acted knowingly and intentionally; and (3) that he did so either without a legitimate medical purpose or outside the usual course of professional practice. [Jury Instruction No. 24].

Dr. McElwee argues that there was an insufficient factual basis from which a reasonable jury could convict him of counts 73-82 because there was no evidence of joint participation, financial gain, or of an attempt to secrete the bottles of pills. Again, his argument is unconvincing. In addition to the evidence described above, the Government presented evidence that Dr. McElwee gave Wendy Chriss unlimited authorization to order controlled prescription drugs on the internet from Moore Medical Supply, a pharmaceutical

supply company located in Connecticut. [Govt. Ex. 73-001]. Over the next fifteen (15) months, the evidence showed that Chriss ordered nineteen (19) bottles containing 500 pills or tablets of hydrocodone each, for a total of 9,500 pills. [Govt. Ex. 73-003]. Dr. McElwee admitted at trial that he obtained these pills for the convenience of himself, his employees and their families. There was also ample testimony at trial from former "patients" who testified that they were able to obtain prescriptions for hydrocodone from Dr. McElwee's office, despite the fact that Dr. McElwee never performed a medical exam on these individuals.

Dr. McElwee was well-aware that members of his staff were taking hydrocodone without a documented medical need. Yet, he gave his staff unlimited prescribing authority and had no system in place for controlling or monitoring the prescriptions for hydrocodone. Moreover, the evidence showed that after Dr. McElwee received subpoenas from the Louisiana State Board of Medical Examiners, he assisted his staff in altering and falsifying medical charts and discussed creating a "dispensation record book" with Chriss.

Accordingly, after a careful and thorough review of the record, the Court finds there was substantial evidence from which a rational jury could conclude beyond a reasonable doubt that Dr. McElwee conspired and enabled widespread possession and distribution of hydrocodone to persons and that such possession and distribution was done without a legitimate medical need and outside the usual course of professional practice.

### 3. Providing False and Fraudulent Information in a Record

Count 83 charges Dr. McElwee with providing false and fraudulent material information in a record required by law to be kept, in violation of 21 U.S.C. § 843(a)(4)(A). The Court instructed the jury that, to find Dr. McElwee guilty of this offense, they must find

beyond a reasonable doubt: (1) that the defendant knowingly and intentionally furnished false or fraudulent information; (2) that the information was material; and (3) that the defendant knew that accurate records are required by law to be kept. [Jury Instruction No. 25].

Dr. McElwee argues that the Government failed to prove that he had an obligation under federal law to keep a log of any disbursements of CDS from his office. [Record Document 262-1, p.3]. This was a point of argument during the charge conference, and the Court determined that, pursuant to 21 C.F.R. § 1304.03, the defendant was required to keep a record of controlled substances "which [were] dispensed, other than by prescribing or administering in the lawful course of professional practice." The jury was so instructed, and rightfully so. See Jury Instruction No. 25.

The evidence at trial pertaining to the so-called record book and its falsity was overwhelming. In fact, Dr. McElwee admitted to knowing the record book was created only after he was contacted by the medical board. He also knew that the record book did not accurately record the hydrocodone being "dispensed" or simply given to himself, his staff, their families, and his patients. Accordingly, the Court finds there was substantial evidence from which a reasonable trier of fact could conclude beyond a reasonable doubt that Dr. McElwee provided false and fraudulent material information in a record required to be kept by law.

### 4. Health Care Fraud

Count 87 charges Dr. McElwee with health care fraud in violation of 18 U.S.C. § 1347 and § 2. To find Dr. McElwee guilty of this offense, the jury was instructed that they must find beyond a reasonable doubt: (1) that the defendant knowingly and willfully

executed or attempted to execute a scheme or artifice to defraud a health care benefit program as described in the indictment; (2) that as a part of the scheme the defendant obtained money or property or attempted to obtain money or property under the custody or control of a health care benefit program by means of false pretenses, representations or promises; (3) that the defendant acted with a specific intent to commit fraud; and (4) that the scheme was perpetrated against a health care benefit program in connection with the delivery of or payment for health care benefits or services. [Jury Instruction No. 26]. The jury was further instructed that: "A defendant acts with the requisite intent to defraud if the defendant acted knowingly and with the specific intent to deceive, ordinarily for the purpose of causing some financial loss to the health care benefit plan or to bring about some financial gain to the defendant." Id.

Dr. McElwee claims "[t]here is absolute no iota of evidence that [he] participated in the charged health care fraud." [Record Document 262-1, p.3]. This argument must fail, as Dr. McElwee admitted at trial that he obtained hydrocodone in his wife's name for his own use, and that these claims were submitted to and paid by his health insurance company, Blue Cross Blue Shield of Louisiana ("BCBS"). BCBS would not have paid the costs of these prescriptions had it known these claims were fraudulent; in other words, Dr. McElwee's actions caused a financial loss to BCBS. Accordingly, the Court finds there was substantial evidence from which a reasonable trier of fact could conclude beyond a reasonable doubt that Dr. McElwee committed health care fraud.

    **B.**    **Ava Cates McElwee**

Ms. McElwee combines her Rule 29 and Rule 33 arguments, therefore the Court will address her claims by count. Like her husband, Dr. McElwee, she contends there was no

direct evidence of her guilt, and that there was insufficient circumstantial evidence from which a reasonable jury could conclude that she was guilty beyond a reasonable doubt as to Counts 1 and 54 of the Indictment. Ms. McElwee did not testify at trial.

### 1. Conspiracy to Obtain a Controlled Substance by Fraud

Count 1 charges Ms. McElwee with conspiracy to obtain a controlled substance (hydrocodone) by fraud in violation of 21 U.S.C. § 846. The jury was instructed that to find Ms. McElwee guilty of this offense, the government must have proved beyond a reasonable doubt: (1) that two or more persons, directly or indirectly, reached an agreement to conspire to obtain and acquire a mixture and substance containing hydrocodone by misrepresentation, fraud, forgery, deception, or subterfuge; (2) that the defendant knew of the unlawful purpose of the agreement; and (3) that the defendant joined in the agreement willfully, that is, with the intent to further its unlawful purpose. [Jury Instruction No. 21].

As discussed above, a "conspiracy" is an agreement between two or more persons to join together to accomplish some unlawful purpose. The existence of an agreement may be proved by circumstantial evidence, and even minor participation in the conspiracy may serve as the basis for a conviction. United States v. Bieganowski, 313 F.3d 264, 277 (5th Cir. 2002) (internal citations omitted). "Moreover, in a conspiracy case, an agreement may be inferred from concert of action, voluntary participation may be inferred from a collection of circumstances, and knowledge may be inferred from surrounding circumstances." Id. (internal quotations and citations omitted).

Here, Ms. McElwee argues there was no evidence from which a reasonable jury could infer that she knowingly and intentionally conspired with other persons to obtain

hydrocodone by fraud. [Record Document 253]. Ms. McElwee's argument fails, however, as a careful and thorough review of the record indicates there was substantial evidence from which a jury could convict Ms. McElwee on Count 1. At least ten (10) signature logs were introduced at trial purporting to show that "A. McElwee" or "Ava McElwee" signed for various hydrocodone-containing substances (i.e., Lortab, Histussin HC, H-C Tussive); the driver's license number by the prescriptions of Ava McElwee from the CVS Pharmacy in Bossier City, Louisiana was identified as belonging to Ava McElwee; Ms. McElwee's medical chart included only two occasions on which Lortab (hydrocodone) was prescribed and only three occasions on which Histussin HC (hydrocodone) was prescribed; the prescriptions in Ms. McElwee's medical chart matched the only prescriptions on the QVL patient profiles which were subpoenaed by the State Board of Medical Examiners; and there was testimony at trial that medical charts were altered using QVL patient profiles.

Furthermore, the Government presented Conchita McElwee's falsified medical chart which included a purported vaginal examination note and a notation indicating that the patient was prescribed Lortab for menstrual cramps. Both of these notes were in the handwriting of Ava McElwee. However, Conchita McElwee (the daughter-in-law of Dr. and Ms. McElwee) testified that she never had a vaginal examination by either Dr. or Ms. McElwee and that she had never been prescribed Lortab by either Dr. or Ms. McElwee for menstrual cramps. In fact, Conchita McElwee testified that she cannot take Lortab because she is allergic to hydrocodone. Another witness testified that the entire medical chart for Conchita McElwee was fabricated after receipt of the Louisiana State Medical Board subpoena. The Government also presented false examination notes listing the patient's name as "Conchita 'Brandi' McElwee." Conchita McElwee testified that she had

never gone by the name "Brandi." See Gov't Exs. 108-001 to 108-004. Testimony at trial revealed that "Brandi" is actually the McElwees' dog.

In addition, co-defendant Susan Hotard testified that, after the investigation by the Louisiana State Board of Medical Examiners had begun, Ms. McElwee told her: "Wendy is going to save our ass with that book" (referring to the false record book). Sandra Brannon, another co-defendant, testified that when the McElwees came to her home, Ms. McElwee informed her that "we all may be going to jail." Brannon also testified that she discussed with Ms. McElwee the number of hydrocodone pills she was taking, and that Ms. McElwee merely told her to "slow down" on the amount of prescriptions being submitted to pharmacies.

Accordingly, considering all of the evidence, the Court finds there was a substantial amount of evidence from which a reasonable trier of fact could conclude beyond a reasonable doubt that Ms. McElwee conspired to obtain a controlled substance (hydrocodone) by fraud and that the weight of the evidence strongly preponderates in favor of the verdict.

### 2. Obtaining a Controlled Substance by Fraud

Count 54 charges Ms. McElwee with knowingly and intentionally obtaining and acquiring a controlled substance (hydrocodone) by fraud on January 6, 2006, in violation of 21 U.S.C. 843(a)(3) and 18 U.S.C. § 2. [Record Document 1]. At trial, the jury was instructed that to find Ms. McElwee guilty of this offense, the Government must have proved beyond a reasonable doubt: (1) that the defendant obtained or acquired a mixture and substance containing hydrocodone; (2) that the defendant utilized misrepresentation, fraud, forgery, deception, or subterfuge to obtain a mixture and substance containing

hydrocodone; and (3) that the misrepresentation, fraud, forgery, deception, or subterfuge was material. [Jury Instruction No. 23].

The Government presented documentary evidence at trial showing numerous prescriptions were submitted to Fred's Pharmacy on January 6, 2006, in the name of Ava McElwee, Susan Hotard, Conchita McElwee, and Kristina Randall. See Gov't Exs. 45-001, 45-003, 54-002, 68-001. The signature log from Fred's Pharmacy also shows that the two prescriptions in Ms. McElwee's name were signed by "A. McElwee." Considering this evidence, together with all the other evidence discussed above and presented by the Government at trial, the Court finds there was a substantial amount of evidence from which a rational jury could conclude beyond a reasonable doubt that Ms. McElwee was guilty of Count 54. Furthermore, the weight of the evidence strongly preponderates in favor of the guilty verdict.

## CONCLUSION

Based on the foregoing analysis, the Court finds that there was sufficient evidence to support the convictions of Defendants Tandy W. McElwee, Jr. and Ava Cates McElwee, that the Court did not err in giving the supplemental "missing witness" instruction to the jury, and that no miscarriage of justice occurred. Accordingly, Defendant Tandy W. McElwee, Jr.'s Motion for New Trial [Record Document 261], Defendant Tandy W. McElwee, Jr.'s Motion for Post Judgment Verdict of Acquittal [Record Document 262], and Defendant Ava Cates McElwee's Motion for Judgment of Acquittal, or Alternatively, Motion for New Trial [Record Document 253] shall be **DENIED.**

An order consistent with this Memorandum Ruling shall issue herewith.

      **THUS DONE AND SIGNED** in Shreveport, Louisiana, on this 15th day of January, 2010.

                                                       _____
                                                          S. MAURICE HICKS, JR.
                                                      UNITED STATES DISTRICT JUDGE